Edward A. JENSEN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18646.

United States Court of Appeals
Ninth Circuit.

Jan. 22, 1964.

Rehearing Denied March 12, 1964.

Sam Houston Allen, Van Nuys, Cal., Breidenbach & Milhollan, and Francis Breidenbach, Bismarck, N. D., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section and James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge:

The United States of America, appellee here, brought this civil action pursuant to the Act of March 8, 1946, commonly known as the Anti-Kickback Act, 41 U.S. C. § 51,[1] to recover from Edward Jensen, appellant here, and eight other defendants who are not parties to this appeal, fees and commissions illegally paid by the defendants.

Appellant did not file in the district court a statement of the points on which he intended to rely on appeal, as required by Rule 75(d) of the Federal Rules of Civil Procedure; nor did he file a statement of points with the clerk of this court in compliance with Rule 17(6) of the rules of this court. As the record on appeal he designated only the pleadings, findings of fact and conclusions of law, and judgment. Appellee, however, designated .as additional items a trial stipulation and all exhibits received on behalf of the plaintiff-appellee.

In his brief appellant specifies as error certain findings of fact and conclusions of law of the district court. Even though we waive compliance with the rules requiring a statement of points,[2] we are limited, in determining the sufficiency of the evidence to support the district court's findings and conclusions, to those facts which were established, without proof, by the stipulation of the parties.

During the years 1951 and 1952 Pacific Airmotive Corporation was engaged in the business of performing purchase orders and subcontracts for the furnishing of supplies, materials, equipment and services under various prime contracts.

1. The statute, as it existed when the complaint was filed on September 27, 1957, provided in pertinent part:

"The payment of any fee, commission, or compensation of any kind or the granting of any gift or gratuity of any kind, either directly or indirectly, by or on behalf of a subcontractor, as defined in section 52 of this title, (1) to any officer, partner, employee, or agent of a prime contractor holding a contract entered into by any department, agency, or establishment of the United States for the furnishing of supplies, materials, equipment or services of any kind whatsoever, on a cost-plus-a-fixed-fee or other cost reimbursable basis; or to any such prime contractor or (2) to any officer, partner, employee, or agent of a higher tier subcontractor holding a subcontract under the prime contract, or to any such subcontractor either as an inducement for the award of a subcontract or order from the prime contractor or any subcontractor, or as an acknowledgment of a subcontract or order previously awarded, is prohibited. * * * Upon a showing that a subcontractor paid fees, commissions, or compensation or granted gifts or gratuities to an officer, partner, employee, or agent of a prime contractor or of another higher tier subcontractor, in connection with the award of a subcontract or order thereunder, it shall be conclusively presumed that the cost of such expense was included in the price of the subcontract or order and ultimately borne by the United States. * * * "
The statute was amended in 1960 by Pub. L. 86–695, 74 Stat. 740, but the district court in no way relied upon the amendment.

2. The failure to comply with the rules "does not affect the validity of the appeal, but is ground for such action as we deem appropriate". United States v. Gallagher, 9 Cir. 1945, 151 F.2d 556, 559. See also Hargraves v. Bowden, 9 Cir. 1954, 217 F. 2d 839, 840.

between the United States and other companies. Pacific Airmotive Corporation, as a first-tier subcontractor, awarded purchase orders and outside production orders to Jensen Manufacturing Company, a second-tier subcontractor, for the furnishing of these supplies, materials, equipment and services. The prime contracts were generally on a cost-plus, a fixed fee, or other cost reimbursable basis. Jensen Manufacturing Company submitted invoices to Pacific Airmotive Corporation, and this corporation paid the invoices by issuing checks to Jensen Manufacturing Company.

Appellant was the owner and operator of Jensen Manufacturing Company. During 1951 and 1952 he made payment to Airframe Suppliers of Burbank and Airframe Suppliers, Inc. in the total sum of $34,692.44. One-half of this amount was admittedly paid as "an inducement for and in acknowledgment of the orders awarded to Jensen Manufacturing Company" by Pacific Airmotive Corporation. Jensen contends that the other half was paid for services performed by Airframe Suppliers of Burbank and Airframe Suppliers, Inc. It appears, however, that all of the payments were computed by taking a certain percentage of the monetary amount of invoices from Jensen Manufacturing Company to Pacific Airmotive Corporation. The trial court found that the "total sum of $34,692.44 paid by defendant Edward A. Jensen and Jensen Manufacturing Company * * * constituted commissions paid as an inducement for and in acknowledgment of the purchase orders and subcontracts awarded to Jensen Manufacturing Company * * *." (Finding X)

Airframe Suppliers of Burbank was a partnership composed of Millard A. Wachter, Darrold R. Wetmore, Alan F. Broz, and Robert W. Hopkins. It is stipulated that all monies received by the partnership were, after deducting expenses, divided more or less equally among the four. Airframe Suppliers, Inc. was an incorporation of the partnership, and payments to the corporation were divided in the same manner as payments to the partnership.

Two of the partners in Airframe Suppliers, Wachter and Wetmore, were employed full time by Pacific Airmotive Corporation and were, respectively, the second and third ranking executive officials in charge of its manufacturing division. The other two partners, Broz and Hopkins, were not shown to have any relationship to Pacific Airmotive. Wachter and Wetmore were joined as defendants in this action, although they are not parties to this appeal. Broz and Hopkins were not made parties to the action.

Jensen knew that Wachter and Wetmore were employees of Pacific Airmotive, as well as members of the Airframe Suppliers firms, and he knew that monies paid to Airframe Suppliers of Burbank and Airframe Suppliers, Inc. would be received by Wachter and Wetmore. Apparently there was no showing that Jensen knew how much money Wachter and Wetmore received, or how the money he paid to Airframe Suppliers would be divided among Wachter, Wetmore, Broz, and Hopkins.

The case was tried before the court, without a jury, and judgment was entered against Jensen and Airframe Suppliers, Inc., jointly and severally, for the full amount of $34,692.44, plus interest and costs.

Appellant first contends that the court erred in finding that the entire sum was paid as an inducement for and in acknowledgment of purchase orders and contracts from Pacific Airmotive. It is well settled that the district court's findings of fact cannot be set aside on appeal unless "clearly erroneous". Rule 52(a) Federal Rules of Civil Procedure; United States v. Grissler, 9 Cir.1962, 303 F.2d 175, 176. The transcript of the testimony, including appellant's own testimony, is not before us, and the record on appeal does not include all of the evidence on which the district court might have based its findings. "In such a situation, this Court may not consider appellant's contention." Watson v. Button, 9 Cir. 1956, 235 F.2d 235, 237.

Appellant next contends that the court erred in finding as a fact that all sums paid by appellant to Airframe Suppliers were paid to employees of Pacific Airmotive Corporation. (Finding XVI) The absence of a transcript of the evidence is not fatal to a consideration of this specification of error. It is stipulated that all monies received by both Airframe Suppliers of Burbank, the partnership, and Airframe Suppliers, Inc., the corporation, were, after deducting expenses, divided "more or less equally between Wachter, Wetmore, Broz, and Hopkins".[3] It is agreed that only two of the four, Wachter and Wetmore, had any connection with the first-tier subcontractor, Pacific Airmotive.[4]

The Anti-Kickback statute, 41 U.S.C. § 51, (note 1 supra) prohibits "[t]he payment of any fee, commission, or compensation of any kind * * * by * * * a subcontractor * * * to any officer, partner, employee, or agent of a higher tier subcontractor * * *." Appellant accordingly contends that only half of the sums which he paid, i. e., the amounts received by Wachter and Wetmore, constituted payment to persons proscribed by the Act, and that recovery must be limited to the amounts they received.

Appellee argues that appellant by his own wrong made it possible for all of the monies to be distributed to proscribed employees, and the fact that only one-half actually went to them should not relieve appellant for liability for the entire sum; that "when the money left appellant's hand it was all tainted with an illegal purpose" and the later division of the money "did not operate to remove this taint."

Counsel have cited no case, nor has our research disclosed any, which has considered this question.[5] We conclude that the wording of the Act supports appellant's position. Airframe Suppliers itself, whether as a partnership or corporation, "is not an officer, partner, employee, or agent of a higher tier subcontractor" to which payment of a fee or commission is prohibited. It was the payment to and receipt of monies by Wachter and Wetmore, the proscribed employees of Pacific Airmotive, which constituted the prohibited act. This was not accomplished until distribution of the payments among the partners or shareholders. Broz and Hopkins were not proscribed employees. The Government did not seek recovery from them of any of the money paid by appellant.[6] We conclude that appellant may not be held for the monies received by Broz and Hopkins.

Since the district court concluded that the entire sum of $34,692.44 was paid to proscribed employees, no findings were made as to the amounts which were actually paid to Wachter and Wetmore. The case must be remanded for additional findings on this point.

3. Trial Stipulation, para. 12, Transcript of Record p. 38.

4. Brief for Appellee, p. 4, ftnt. 4: "Alan F. Broz and Robert W. Hopkins were not employees of Pacific Airmotive Corporation and were not made defendants in this action."

5. Appellee relies upon Bigelow v. RKO Radio Pictures, 1946, 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652, and other cases holding that in computing damages the wrongdoer must "bear the risk of the uncertainty which his own wrong has created." This is not a question of uncertainty. It is admitted that the proscribed employees receive one-half of the amount, more or less, after deducting expenses. If there should be any uncertainty regarding the amounts received by Wachter and Wetmore, that question must be resolved against appellant.

6. The United States argues further that "the proscribed employees themselves as recipients would have been liable for the entire sum either as joint venturers or as partners". It is not clear whether or not it is contended that the remaining partners and joint venturers would also be liable. The judgment was entered against appellant and the corporation and not against any of the partners. It is immaterial whether the partnership be regarded as an entity or an association of individuals and whether any or all of the partners would also be liable personally. It is the payments to the proscribed employees which are prohibited and which may be recovered in this action.

■ Appellant's third contention is that the court erred in concluding as a matter of law that payments made by appellant were in violation of the Anti-Kickback Act because there was no finding or evidence of payments to a proscribed entity. In the face of appellant's admissions that one-half of the payments were "commissions paid as an inducement for and in acknowledgment of the orders awarded to Jensen Manufacturing Company * * *" and that Jensen knew that monies paid to Airframe Suppliers of Burbank and Airframe Suppliers, Inc., would be received by Wachter and Wetmore,[7] this argument seems somewhat specious.

The Anti-Kickback Act (note 1) prohibits the payment "either directly or indirectly", by or on behalf of a subcontractor to any employee of a higher tier subcontractor. The clear intent and wording of the act may not be evaded by the device of making payments through a partnership or corporation. Clearly one-half the amount was paid indirectly to Wachter and Wetmore, and the fact that the payments went through the partnership and corporation before reaching the proscribed recipients does not relieve appellant of liability.

Finally, appellant argues that the Act is unconstitutional, (1) because it provides a conclusive presumption that the cost of any kickback was ultimately borne by the United States, and (2) because of alleged unequal treatment of those who are the payers and those who are the recipients of a kickback.

■ This court has held that "conclusive presumptions do not establish a rule of evidence, *but declare a rule of substantive law.*" United States v. Jones, 9 Cir.1949, 176 F.2d 278, 288. In United States v. Davio, E.D.Mich.1955, 136 F. Supp. 423, 429, after quoting this statement from United States v. Jones, the court said: "As a rule of substantive law, the conclusive presumption of the Anti-Kickback Act is not offensive to due process since it is based on a logical and probable connection with the antecedent facts." We agree.

As pointed out in United States v. Davio, the Government bears all allowable costs in a cost-plus-a-fixed-fee or other cost reimbursable contract. This was recognized by Congress in enacting the Anti-Kickback Act. H.R.No.212, 79th Cong. 1st Sess., February 22, 1945, reads in pertinent part:

"* * * Since cost-plus-a-fixed-fee or cost reimbursable prime contractors are reimbursed by the United States for the cost of all subcontracts and purchase orders performed thereunder, the Government undoubtedly bears the ultimate cost of such fees, commissions, and gratuities without receiving any benefit therefrom." U.S.Code Cong.Serv. 1946, p. 1082.

■ Nor is there merit in appellant's contention that the Act is "unconstitutional because of unequal treatment given to those who pay as opposed to those who receive". Assuming that there is unequal treatment or discrimination, which we question,[8] it is not of such a nature as to render section 1 of the Anti-Kickback Act unconstitutional. The Fifth Amendment contains no equal protection clause, and it restrains only such discriminatory legislation by Congress as amounts to a denial of due process. Detroit Bank v. United States, 1943, 317 U.S. 329, 337–338, 63 S.Ct. 297, 87 L.Ed. 304, and cases there cited.

■ No such case is presented here. The applicable rule was stated by this court in Hess v. Mullaney, 9 Cir. 1954, 213 F.2d 635, (cert. denied 348 U.S. 836,

---

7. R. 38, 39.

8. We cannot agree with appellant that the recipient "comes out even" so to speak while the payer is poorer by the amount received. The payer received substantial orders and contracts as a result of the kickbacks. This business must have been of value to appellant, since he was willing to pay a commission to get it. Presumably he recognized the risk of being held for the payments illegally made and was willing to take that risk.

896

75 S.Ct. 50, 99 L.Ed. 659), as follows: "* * * No equal protection clause such as that directed by the Fourteenth Amendment to the States restricts the power of Congress. (Citations omitted.) As the authorized discrimination here cannot be said to be so extreme, or so devoid of reasonable basis as to be wanting in due process, we find no constitutional question present." 213 F.2d at 644–645. Any discrimination in treatment under the Anti-Kickback Act is not "so extreme, or so devoid of reasonable basis as to be wanting in due process."

Reversed and remanded for determination of amounts received by the proscribed employees, Wachter and Wetmore, and entry of judgment for those amounts.